**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

Tavion Blount, AKA, Tatiana Blount

Case No.: _____

Plaintiff,

v.

JURY TRIAL DEMANDED

School Board of the City of Norfolk,
Latesha Wade-Jenkins.

Defendants.

## COMPLAINT

Plaintiff, Tavion Blount, AKA, Tatiana Blount (hereinafter "Ms. Blount" or "Plaintiff"), by and through her attorneys, the Law Office of Carteia V. Basnight P.C., for her Complaint against Defendants, aver as follows:

1. Plaintiff is a transgender woman who reached the age of majority in August of 2024; during the time of her minority, Plaintiff suffered, and still suffers, from gender dysphoria, a disability under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (the "ADA")

2. Plaintiff brings this Complaint for relief under Title II of the ADA (42 U.S.C. §§ 12131 *et seq*.) and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. §§ 794

*et seq*., ("Section 504") for discrimination Ms. Blount suffered at the hands of Defendants and the grievous injuries caused by their gross indifference to Ms. Blount's disability and safety—as a direct result of the wrongs of Defendants Ms. Blount has suffered permanent brain damage.

3. Despite multiple requests made by Ms. Blount and her mother, Cynthia Smith (hereinafter "Mother"), administrators at the Lake Taylor Highschool did nothing to assure that Ms. Blount was safe at school and failed to prevent pre-planned, disability-motivated, violence, of which the school had advanced notice, that resulted in Ms. Blount being battered so severely as to lose consciousness on multiple occasions and to suffer a traumatic brain injury that has permanently diminished Ms. Blount's mental capacity.[1]

**JURISDICTION**

4. Plaintiff's claims arise in part from the ADA and § 504 such that the jurisdiction of this Court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343. Through the same actions and omissions that form the basis of Plaintiff's federal claims, Defendants have also violated Plaintiff's rights under state law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367.

---

[1] Ms. Blount does not sue her student-attackers primarily because they lack the same moral culpability for the acts Ms. Blount suffered and in the hope that the grace demonstrated by Ms. Blount will assist them in maturing.

COMPLAINT
*Blount v. City of Norfolk, et al.*

**VENUE**

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) & (2), because Defendants are residents of the Eastern District of Virginia and a substantial portion of the events giving rise to this claim occurred within the Eastern District.

**PARTIES**

6. Defendant School Board of the City of Norfolk ("Entity Defendant") is a public school district organized and existing under the laws of the Commonwealth of Virginia, located within the independent city of Norfolk. At all times relevant herein, Entity Defendant was the local education agency responsible for providing Plaintiff with full and equal access to its public education programs and activities in compliance with the requirements of state and federal law.

7. Entity Defendant, on information and belief, receives both state and federal financial assistance.

8. Latesha Wade-Jenkins ("Ms. Wade-Jenkins") at all times relevant was the principal of Lake Taylor High School (the "School") a school located within the Entity Defendant.

9. Ms. Jenkins is sued in her individual capacity, except with regard to Plaintiff's ADA and § 504 claims where she would not be a proper party.

- 3 -

COMPLAINT
*Blount v. City of Norfolk, et al.*

10. Plaintiff is a nineteen-year-old transgender woman, who was sixteen years old at the time of the violations alleged herein. She resides with her parents in Norfolk Virginia, and within the boundaries of the Entity Defendant

11. Plaintiff was, and is, a qualified individual with a disability within the meaning of Section 504 and the ADA, specifically gender dysphoria,[2] this disability affects multiple major life activities of Ms. Blount.

## FACTS

12. Ms. Blount physically attended the School from her freshman year beginning in 2021 until October 5, 2022. During her tenure at the School, Ms. Blount was subject to severe bullying at the hands of multiple students.

13. Mother met with Ms. Wade-Jenkins prior to the beginning of the 2022 school year, in or about August or early September of 2022, to discuss Ms. Blount's disability and concerns regarding bullying.

14. During the 2021-2022 school year, despite being the victim of bullying, Ms. Blount was expelled from school for the remainder of the 2021-2022 school year for defending herself from a bully.

---

[2] The Fourth Circuit has recognized gender dysphoria as a "disability" under the ADA, *Williams v. Kincaid*, 45 F.4th 759 (4th Cir. 2022), *cert. denied* 143 S.Ct. 2414 (Mem) (2023); Ms. Blount, and counsel, use the term "disability" and "disabled" in a purely legal sense.

- 4 -

COMPLAINT
*Blount v. City of Norfolk, et al.*

15. During the 2022 meeting prior to the start of the 2022-2023 school year, Mother communicated her concerns, given Ms. Blount's disability, and specifically the need to protect Ms. Blount from severe harassment and bullying motivated by Ms. Blount's gender dysphoria.

16. Ms. Wade-Jenkins informed Mother, that she would communicate Ms. Blount's preferred pronouns to teachers and note that teachers should utilize the name "Tatiana" instead of "Tavion"; despite, apparently, crediting Mother's concerns around discriminatory bullying, did not put in place any accommodation to address Mother's safety and bullying concerns.

17. Almost immediately Ms. Blount was subjected to bullying and harassment specifically due to her disability; a cadre of of students (collectively referred to as the "Bullies") were harassing and bullying Ms. Blount on a daily basis due to Ms. Blount's disability.

18. Mother reported the disability-based harassment to Ms. Wade-Jenkins and following four particularly severe incidents of disability-motivated bullying incidents in the first weeks of the 2022-2023 Schoolyear.

19. At least five separate meetings—both telephonic and in person—were held at Mother's request; in each Mother pleaded for an accommodation to be provided to ensure that Ms. Blount could be protected and enjoy schooling.

- 5 -

COMPLAINT
*Blount v. City of Norfolk, et al.*

20. Relating to, but independent of Ms. Blount's gender dysphoria, in or about early 2022, Ms. Blount began transitioning and identifying as a woman, as part of this transition Ms. Blount began utilizing the name Tatiana, utilizing female pronouns, dressing as a woman, and undertaking various steps to present as a woman.

21. By mid-2022, Ms. Blount had begun living as female every day and likewise was subject to harassment and bullying every day. Some of this was in the form of hurtful comments or malicious communications, for instance referring to Ms. Blount as "sir," "Mr.," or "man," or the making of rude and hateful comments about her clothing, genitals, breasts, or sex; some of this was sexually violent in the sense of groping Ms. Blount's breasts, buttocks, or genitals; and some of it was simply violent, punches, kicks, and at its worst, literally group beatings vicious to the point where Ms. Blount would lose consciousness.

22. The above actions were committed by the Bullies, each of whom both Ms. Blount and Mother had identified to Entity Defendant's administration including Ms. Wade-Jenkins.

23. The bullying and harassment became particularly acute and severe in the second half of Ms. Blount's freshman year, immediately after Ms. Blount began her public transition and continued into Ms. Blount's sophomore year unabated.

COMPLAINT
*Blount v. City of Norfolk, et al.*

24. It was for this reason that Mother met with Ms. Wade-Jenkins prior to the start of Ms. Blount's sophomore year and continued to communicate with Ms. Wade Jenkins throughout September and October of 2022 desperately seeking some accommodation to protect her daughter from disability-motivated violence and harassment.

25. The worst incident of bullying was announced on social media, approximately 48 hours prior to the physical attack, a student (one who had previously been bullying Ms. Blount) published online that one of the Bullies planned to jump Ms. Blount.

26. That same student ("Student K") had entered Ms. Blount's classroom—Student K was not enrolled in Ms. Blount's class—and threatened Ms. Blount in front of the class.

27. The student, her threats, and the fact that she was bullying Ms. Blount because of Ms. Blount's disability was known to Ms. Wade-Jenkins and School administrators prior to the attack of October 5, 2022.

28. Both Mother and Ms. Blount contacted Ms. Wade-Jenkins regarding the in-person threats made by Student K in front of Ms. Blount's class.

29. They again reiterated their fear and concern over the lack of any adequate accommodation that would allow Ms. Blount to safely enjoy school given the severe and prevalent disability-motivated bullying.

COMPLAINT
*Blount v. City of Norfolk, et al.*

30. They requested that an adult supervise or monitor Tatiana as she walked from class to class to prevent disability-motivated bullying which primarily occurred during the periods in-between classes and during other unstructured or unsupervised times such as during bathroom breaks, on the school bus, and during lunch periods.

31. Indeed, throughout September and October 2022, Ms. Blount had been the victim of severe bullying during these periods due to her disability.

32. In September 2022, in between classes, three Bullies approached Ms. Blount and made harassing comments about her genitalia and breasts.

33. After the incident, Mother contacted Ms. Wade-Jenkins, made her aware of the disability-motivated bullying and requested that an accommodation be provided to keep Ms. Blount safe.

34. No adequate accommodation was forthcoming.

35. In September 2022, during a visit to the restroom, Ms. Blount was followed by another student who confronted her in the restroom and began to make comments about Ms. Blount's private parts and ask inappropriate questions.

36. After the incident, Mother contacted Ms. Wade-Jenkins, made her aware of the disability-motivated bullying and requested that an accommodation be provided to keep Ms. Blount safe.

37. Yet again, no adequate accommodation was forthcoming.

COMPLAINT
*Blount v. City of Norfolk, et al.*

38. In September 2022, while riding the school bus a student began verbally harassing Ms. Blount calling her "sir" and "man," and referring to the masculinity of her features, this escalated to the student pulling at Ms. Blount's chest and forcefully pulling down her shirt and bra exposing her bare chest to others.

39. Yet again, Ms. Jenkins was made aware, accommodation was requested, and no adequate accommodation was forthcoming.

40. This formed a pattern that repeated throughout the month of September and the first week of October: a concerning incident of gender-based bullying or harassment occurred, Ms. Wade Jenkins was made aware of it, but failed to ensure that accommodations were provided to keep Tatiana safe.

41. Finally, Mother contacted Ms. Wade-Jenkins on or about October 3, 2022, and provided Ms. Wade-Jenkins with screenshots of the threats posted on social media by Student K.

42. Mother expressed dire concern as the incidents of bullying and harassment had continued to worsen—escalating from insensitive name calling to out and out physical violence.

43. Mother again requested supervision during the periods where students were not in class.

COMPLAINT
*Blount v. City of Norfolk, et al.*

44. Mother was informed that there were multiple students that suffered similar issues and that because Tatiana "wasn't the only student" with similar problems there was nothing the School could do.

45. On information and belief, Ms. Wade-Jenkins was referring to other students who had gender dysphoria and presented as being transgender that were subject to severe bullying.

46. On information and belief, the School systematically failed to protect those other students from severe and pervasive disability based bullying.

47. Ms. Wade-Jenkins suggested that Ms. Blount cease attending the School and transfer to another school.

48. The pre-planned attack occurred as announced; on October 5, 2022, multiple students, including Student K, physically attacked Tatiana, while making derogatory comments about her transgender status and disability, the attack lasted for minutes and during the attack Ms. Blount lost consciousness on numerous occasions—the attackers continued to kick Ms. Blount in the body and head while she was on the ground unconscious.

49. The School did not call EMS, nor call for ambulance services, to take Ms. Blount to receive emergency treatment.

COMPLAINT
*Blount v. City of Norfolk, et al.*

50. Ms. Wade-Jenkins knew of the attack, shortly after its occurrence, but failed to secure medical treatment for Ms. Blount.

51. After overnight emergency treatment, it was clear that Ms. Blount had received injuries to her mid and lower back, head, face, neck, chest, legs, and nose.

52. After testing, it would become apparent that Ms. Blount had suffered a traumatic brain injury and concussion, which unfortunately has affected Ms. Blount emotionally, psychologically, and intellectually and which has resulted in permanent cognitive injuries.

53. The Entity Defendant was perfectly aware of Ms. Blount's disability and the harassment that Ms. Blount faced.

54. Mother first contacted the School prior to the beginning of the school year in 2022 after learning that Ms. Blount required accommodations to enjoy the benefits of attending School.

55. Mother's requests for accommodations based on Ms. Blount's gender dysphoria were explicit—despite the fact that Mother expressed them colloquially, it was clear that Mother was requesting that the school provide minimal and reasonable supervision to ensure that Ms. Blount was not subjected to constant disability-motivated bullying.

COMPLAINT
*Blount v. City of Norfolk, et al.*

56. Mother ultimately would contact Ms. Wade-Jenkins almost every week during the 2022 school year, prior to the October 5, 2022 attack, in an attempt to secure accommodations for her daughter which were never provided.

57. Mother's requests differed slightly, but in general Mother requested accommodations that would result in Ms. Blount being physically distanced from the students who had continually harassed Ms. Blount or that where such was impossible that the students only be physically near Ms. Blount with the supervision of an adult who had been informed of the disability-based bullying and had been trained in the prevention of bullying.

58. Mother was repeatedly informed that such was impossible, and, other than the suggestion to cease attending School, the only solution provided was to isolate Tatiana from the *entire* student body (effectively isolating her), which ironically left her more vulnerable and singled her out.

59. On information and belief, the School could have ensured that an adult was within eyesight of Tatiana during transitions from class to class and during the lunch hour.

60. Most tragically, two days prior to the beating of October 5, 2022, Mother contacted Ms. Wade-Jenkins and requested that Ms. Jenkin's keep Ms. Blount away from the students who had previously bullied Ms. Blount and Student K who had announced on social media that she and others planned to "jump" Ms. Blount.

COMPLAINT
*Blount v. City of Norfolk, et al.*

61. Ms. Blount and Mother ultimately never were provided any accommodation that would allow Ms. Blount to safely attend the School; the disability-based bullying and harassment continued throughout the 2022 school year; the Entity Defendant continued to refuse to provide any meaningful accommodation to ensure that Ms. Blount could receive her education; and finally after the October 5, 2022 attack Ms. Blount was unable to ever again attend School normally.

62. Immediately following the October 5, 2022 attack, because the disability discrimination, bullying and harassment were intolerable, and to protect herself from the profound harm befalling her at School, Ms. Blount ceased to attend school in-person entirely; within a year, Ms. Blount completely ceased attending formal schooling.

## COUNT I
### *Violation of Title II of the ADA (42 U.S.C. § 12132)*
*Against the Entity Defendant*

63. Plaintiff realleges and incorporates the allegations in paragraphs 1-62 as if set forth here.

64. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C.A. § 12101(a)(2).

COMPLAINT
*Blount v. City of Norfolk, et al.*

65. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C.A. § 12101(b)(1) & (2).

66. Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132.

67. Pursuant to Title II, public entities are required to provide meaningful access to their programs, services and activities. Specifically, public entities cannot provide programs, services or benefits to a person with a disability that are not equal to those provided to others, or deny a person with a disability the opportunity to participate in programs, services, or activities. 28 C.F.R. § 35.130(b)(1)(iii). Public entities must also modify their policies and procedures when necessary to accommodate disability related needs, and cannot impose eligibility criteria that tend to screen out persons with disabilities. 28 C.F.R. § 35.130(b)(7) & (b)(8). Moreover, public entities are required to administer their programs, services and activities in the most integrated setting appropriate. 28 C.F.R. § 35.130(d).

- 14 -

COMPLAINT
*Blount v. City of Norfolk, et al.*

68. At all times relevant to this action, the Entity Defendant was a "public entity" within the meaning of Title II of the ADA, and provided a program, service or activity to the general public.

69. At all times relevant, including at the time of each alleged violation of the ADA, Entity Defendant provided services, programs, and activities in its public schools, and was obligated to provide Plaintiff with reasonable accommodations that she needed in order to enjoy meaningful access to the benefits of a public education, and otherwise not exclude her from its educational program.

70. Plaintiff is disabled under the ADA and her disability limits one or more major life activities—including, *inter alia* and most relevantly in this case, her ability to succeed in school, study, and learn.

71. Plaintiff is also a qualified individual with a disability in that she is an individual with a disability who, with reasonable modifications to rules, policies, or practices, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity such as Entity Defendant.

72. Plaintiff followed Entity Defendant's guidelines by notifying Entity Defendant of her disability, through Mother and personally, and requesting *de minimus* commonsense accommodations required to make it possible for her to succeed in high school.

- 15 -

73. The Entity Defendant only needed to provide minimal supervision, security, or responsible staffing for a single hour to prevent a known credible disability-motivated attack. Had the School done this, the October 5, 2022 attack would have never occurred and Ms. Blount would not have suffered permanent brain damage.

74. Moreover, had the entity Defendant provided some, or any, of the other requested accommodations, Ms. Blount could have succeeded in her schooling and would not have been subjected to repeated and prevalent harassment.

75. The need for such simple accommodations was painfully obvious and would be plain to any rational actor even absent a specific request.

76. In addition to the obvious and self-evident need for increased supervision, Ms. Blount and Mother specifically requested the provision of minimal supervision during unsupervised times to ensure that Ms. Blount was not made subject to disability motivated bullying and harassment.

77. Entity Defendant, however, rejected all Plaintiff's specific accommodation requests, and her generalized plea for protection, without adequate explanation or defense and this rejection amounted to discriminatory treatment of Plaintiff by denying her the opportunity to participate in or to benefit from the defendants' services, programs, or activities, or to otherwise be discriminated against, under 42 U.S.C.A. § 12132.

78. This failure to provide any reasonable accommodation constituted discrimination and violated Title II of the ADA.

COMPLAINT
*Blount v. City of Norfolk, et al.*

79. Moreover, Plaintiff was subjected to continual disability motivated discrimination and harassment for a period measured in years; to wit, Plaintiff was verbally and physically bullied on a daily basis due to her disability throughout her freshman and sophomore school years.

80. The harassment was so severe and pervasive as to be objectively offensive.

81. Moreover, the continued harassment and bullying effectively deprived Ms. Blount of access to her education at the School and benefits of schooling—indeed, some days Ms. Blount was beaten so badly that she lost consciousness and required hospitalization and every day she lived in anxiety and fear of the bullying and the disability based discrimination became so severe Ms. Blount was forced to cease her studies at School.

82. The Entity Defendant had been put on notice of the harassment and knew how severe it was—even given the events of October 5, 2022, where Ms. Blount lost consciousness on multiple occasions and was beaten so badly as to cause traumatic brain injury, the School ignored Ms. Blount's travails: on that day the School did not call medical staff, request emergency services, or call an ambulance.

83. The School's staff was completely indifferent not only to Ms. Blount's acute medical needs, but for a multiple school years showed utter indifference to the continued disability-motivated harassment and bullying of Ms. Blount.

COMPLAINT
*Blount v. City of Norfolk, et al.*

84. This indifference amounted to *de facto* approval and made Ms. Blount, already vulnerable to bullying because of her disability status, yet more vulnerable to severe bullying and physical violence, which ultimately precluded her from enjoying the benefits of schooling.

85. Accordingly, and as a result of all of the foregoing, Entity Defendant violated Title II of the ADA, and Plaintiff alleges that Entity Defendant committed the acts and omissions alleged herein with intent and/or deliberate indifference to Plaintiff's rights.

86. Entity Defendant was at a minimum deliberately indifferent to the harm it caused Ms. Blount.

87. As a result of the foregoing, Plaintiff suffered injury, including, but not limited to, denial of meaningful access to the benefits of a public education. As a direct and proximate result of the foregoing, Plaintiff has suffered, and continues to suffer loss of educational services and attainment, as well as humiliation, hardship and anxiety, due to Entity Defendant's failure to address accommodations, modifications, services and access required for Plaintiff's disabilities, and its exclusion of Plaintiff.

88. Additionally, Plaintiff suffered physical injuries, permanent impairments, medical bills (past and future), and a multitude of other damages as the proximate result of Entity Defendant's violation of Title II of the ADA.

COMPLAINT
*Blount v. City of Norfolk, et al.*

89. Plaintiff seeks damages and attorney's fees as a result.

### COUNT II
*Violation of Section 504 (29 U.S.C. § 794(a).)*
*By Plaintiff against Public Entity*

90. Plaintiff restates and realleges paragraphs 63-86 as if set forth fully here.

91. Under Section 504, a qualified individual with a disability may not, solely by reason of her disability, be subjected to discrimination, excluded from participation in, or denied the benefits of, any program or activity receiving federal financial assistance including educational programs provided by local educational agencies.

92. Under § 504, public entities are required to provide meaningful access to their programs, services, and activities. Specifically, an education provider "may not, on the basis of *[disability]*, exclude any qualified *[disabled]* student from any course, course of study, or other part of its education program or activity."[3] Further public entities must also ensure that services are provided in the most integrated setting appropriate.[4]

93. Further, school districts are required to provide a Free Appropriate Public Education under § 504, "regardless of the nature or severity of the person's *[disability* and]" public entities are required to provide services "designed to meet individual

---

[3] 34 C.F.R. § 104.43(c); see also 34 C.F.R. § 104.4(b)(1)(iii)
[4] 34 C.F.R. §§ 104.43(d) and 104.34.

- 19 -

COMPLAINT
*Blount v. City of Norfolk, et al.*

educational needs of *[disabled]* persons as adequately as the needs of *[nondisabled]* persons are met."[5]

94. At all times relevant, including at the time of each alleged violation of § 504, the Entity Defendant received federal financial assistance as a public school.

95. At all times relevant, including at the time of each alleged violation of § 504, Plaintiff was a qualified individual with a disability within the meaning of § 504, or was regarded as having a disability.

96. Entity Defendant violated § 504 by failing to provide Plaintiff meaningful access to its programs and *de facto* excluding her from all meaningful schooling, specifically by knowingly allowing the events recounted in paragraphs 12-62 to occur.

97. Accordingly, Entity Defendant has violated § 504, and Plaintiff thereon alleges that Defendant committed the acts and omissions alleged herein with intent and/or deliberate indifference to Plaintiff's rights.

98. Further they occurred solely because of Plaintiff's disability.

99. As a result of the foregoing, Plaintiff suffered injury, including, but not limited to, denial of meaningful access to the benefits of a public education. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered, and continues to suffer loss of educational services and attainment, as well as humiliation, hardship

---

[5] 34 C.F.R. § 104.33(a) & (b).

COMPLAINT
*Blount v. City of Norfolk, et al.*

and anxiety, due to Defendant's failure to address accommodations, modifications, services and access required for Plaintiff's disabilities, and its exclusion of Plaintiff.

100. Additionally, Plaintiff suffered physical injuries, permanent impairments, medical bills (past and future), and a multitude of other damages as the proximate result of Entity Defendant's violation of § 504.

101. Plaintiff seeks damages and attorney's fees as a result.

## COUNT IV
### *Gross Negligence*
*By Plaintiff against Ms. Wade Jenkins and Entity Defendant*

102. Plaintiff restates and reallege paragraphs 1-62 as if set forth fully here.

103. Ms. Wade-Jenkins owed Ms. Blount various duties including the duty arising from her special relationship with Ms. Blount and a common law duty to supervise pupils under her care to ensure that they had an education in an atmosphere conducive to learning, free of disruption, and threat.

104. On or about October 3, 2022 Mother made Ms. Wade-Jenkins aware that Ms. Blount would be attacked by other students and that the students had published that the attack would happen; Mother made Ms. Wade-Jenkins specifically aware that the attack would occur at lunch and in the lunch room, *i.e.*, Ms. Wade-Jenkins was aware both of the time and place of the attack.

COMPLAINT
*Blount v. City of Norfolk, et al.*

105. Beyond the above, Ms. Wade-Jenkins was aware of the severity of past attacks and that the planned beating would very likely result in severe bodily injury.

106. Ms. Wade-Jenkins was in a position to easily prevent the attack with *de minimus* effort, but chose to not even assert that minimal effort to prevent the ultimately life altering injury that Ms. Blount would receive.

107. Ms. Wade-Jenkins displayed a wanton and willful disregard for the safety of Ms. Blount and her duties, amounting to complete neglect and total indifference.

108. Had Ms. Blount carried out her duties, either her special duty to protect Ms. Blount from a known severe danger, or her common law duty to supervise and care for the students, Ms. Blount would have suffered no injury.

109. Ms. Wade Jenkins breached both of her duties of care and was completely negligent—totally and utterly indifferent—as to those duties of care, not bothering to even undertake the most minimal of efforts to prevent injury to Plaintiff.

110. As a proximate result of the breaches of those duties, Plaintiff suffered significant injuries and damage, including, physical, emotional, and psychological injuries, permanent impairments, medical bills (past and future), and a multitude of other damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for the following:

- 22 -

COMPLAINT
*Blount v. City of Norfolk, et al.*

A. General, compensatory, and consequential damages in an amount to be proven at trial;

B. Punitive, statutory, and exemplary damages, against Entity Defendant on Counts I, II, and III, and against Ms. Wade-Jenkins on count III;

C. Any other such damages as may be allowed under all the above federal and state laws;

D. Attorneys' fees and costs; and

E. Such other and further relief as the Court may deem just and appropriate.

## JURY TRIAL DEMANDED

## Respectfully Submitted: <u>May 27, 2026</u>

<u>**/s/ Carteia V. Basnight**</u>
Carteia V. Basnight, Esquire
Virginia Bar No. 79856
Law Office of Carteia V. Basnight
1919 Commerce Drive Suite 495
Hampton, Virginia 23666
Tel.: (757) 838-0001; (757) 548-5871
Email: carteia@basnightlaw.com
***Counsel for Tavion Blount aka Tatiana Blount***

<u>**/s/ Amina Matheny-Willard**</u>
Amina Matheny-Willard, Esquire, VSB #:43566
Amina Matheny-Willard, PLLC
999 Waterside Drive, Suite 2525
Norfolk, Virginia 23510
DD: (757) 652-6462; Tel. (757) 777-3448
Fax: (757) 282-7808
Email: amina@aminalaw.com
***Counsel for Tavion Blount aka Tatiana Blount***

- 23 -

COMPLAINT
*Blount v. City of Norfolk, et al.*